IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

D<small>E</small>ANDRE M. DISMUKE                                                                                          PLAINTIFF

v.                                          Civil No. 1:23-cv-01067

LEROY MARTIN, Sheriff, Columbia County
Detention Center; GEAN SIEGER; and
JERRY MANESS

                                                                                           DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff DeAndre M. Dismuke, a pretrial detainee at the Columbia County Detention Center (CCDC), in Magnolia, Arkansas, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff initiated the matter in the Eastern District of Arkansas. (ECF No. 1). After finding venue to be proper in this District pursuant to 28 U.S.C. § 1391(b), Magistrate Judge Joe J. Volpe of the Eastern District of Arkansas ordered that this matter be transferred here. (ECF No. 3).

Pursuant to the provisions of 28 U.S.C. § § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation. This Court previously directed Plaintiff to file an amended complaint and granted Plaintiff's application to proceed *in forma pauperis* (IFP). (ECF Nos. 6 & 12). Having received the Amended Complaint, this matter is now before the Court for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon that review and for the reasons outlined below, this Court recommends

1

that all claims against Jerry Maness be dismissed as well as the individual capacity claims against Sheriff Leroy Martin. The official capacity claims against Sheriff Leroy Martin and Gean Sieger for allegedly unconstitutional conditions of confinement, denial of proper medical care, and restricting access to "world news" should proceed. The individual capacity claims against Gean Sieger for allegedly unconstitutional conditions of confinement and denial of proper medical care should also proceed.

## BACKGROUND

Plaintiff's Amended Complaint sets forth two main claims.[1] First, naming Leroy Martin, Gean Sieger, and Jerry Maness as defendants in their official and individual capacities, Plaintiff alleges that he suffered inadequate living conditions from May 1, 2023, to July 10, 2023. (Amend. Comp. at p. 4 (ECF No. 8)). In support, Plaintiff contends that the walls, showers, and air ducts at the CCDC are covered in mold, that there is wastewater seeping from underneath the toilet in Pod-1, and that there is no sink for the inmates to wash their hands and face or to brush their teeth. *Id.* According to Plaintiff, on June 19, 2023, the inmates tried to pressure wash the showers to eliminate the black mold, but it returned worse than before they attempted to clean it. *Id.* at p. 5. Plaintiff claims that these conditions have caused him to suffer breathing and sleeping problems, anxiety, congestion, and headaches. *Id.*

Second, Plaintiff claims that the defendants—Leroy Martin, Gean Sieger, and Jerry Maness—have deprived him of his medications for his mental health and have denied his requests

---

[1] Plaintiff's Amended Complaint is the operative pleading in this matter. Fed. R. Civ. P. 15(a). Accordingly, the Court considers whether the Amended Complaint alleges plausible claims for relief pursuant to 28 U.S.C. § 1915A(a) without regard to the original complaint. *See Schlafly v. Eagle Forum*, 970 F.3d 924, 933 (8th Cir. 2020) ("Generally, an amended complaint supercedes an original complaint and renders the original complaint without any legal effect.") (citation omitted).

2

to see a mental health counselor. *Id.* at p. 6. Plaintiff contends that Defendant Gean Sieger has said that she will address the problem, but nothing has changed. *Id.* Plaintiff identifies the defendants in their individual and official capacities. *Id.* at p. 7.

In support of these claims, Plaintiff also contends that he has witnessed multiple suicide attempts at the CCDC, which has caused an additional strain on his mental health. *Id.* at p. 9. According to Plaintiff, he has a history of mental health issues and was transferred from the CCDC to a mental health facility, but when he returned to the CCDC, the jail stopped providing him with his prescribed medication—or failed to provide him with the correct medication—and has not allowed him to see a mental health professional, again causing his mental health to worsen. *Id.* at pp. 9-10. Plaintiff claims that CCDC staff regularly use pepper spray on the inmates, causing him to suffer breathing problems and aggravating his asthma. *Id.* at p. 10. Plaintiff has requested his asthma medication, but those requests have been denied. *Id.* Plaintiff further claims that the food at the CCDC is inadequate, leaving him hungry and causing problems between the inmates, which also worsens his mental health and has led him to experience suicidal ideations because he is so hungry. *Id.* at pp. 9-10. According to Plaintiff, the CCDC houses pretrial detainees with inmates who have been convicted of their charges, and since being detained at the CCDC, he has witnessed six inmates "get their manhood taken," but the PREA hotline does not work. *Id.* at p. 10.

Further, Plaintiff contends that CCDC inmates are not given the opportunity to go outside for weeks, and when they are let outside, they are only afforded fifteen minutes. *Id.* at p. 11. Plaintiff contends that as of the date he filed his Amended Complaint, his pod/barracks had not been outside in 3 weeks. *Id.* Plaintiff contends that his pod does not have a sink or adequate plumbing, and he describes rust on the eating tables, shower walls, and roof. *Id.* at pp. 11-12.

Plaintiff claims that inmates perform plumbing and electrical work at the CCDC even though they are not qualified. *Id.* at p. 12.  Finally, Plaintiff claims that the CCDC does not provide inmates access to "world news," only the county newspaper, which does not address "politics, finances, diseases, or world events." *Id.*  Plaintiff requests compensatory and punitive damages. *Id.* at p. 13.

## LEGAL STANDARD

Under PLRA, the Court is obligated to review the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or (2) seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A pro se complaint, moreover, is to be given liberal construction, meaning "that if the essence of an allegation is discernable, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004).  However, "they still must allege sufficient facts to support the claims advanced." *Id.* at 914 (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, "a plaintiff must allege a violation of a constitutional right committed by a person acting under color of state law." *Andrews v. City of West Branch, Iowa*, 454 F.3d 914, 918 (8th Cir. 2006).  Further, "[p]ublic servants may be sued

4

under section 1983 in either their official capacity, their individual capacity, or both." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).  Here, Plaintiff names the defendants in their official and individual capacity as to all his claims. The Court turns first to the individual capacity claims.

A.      **Individual Capacity Claims**

"Suits against officials in their individual capacity seek to impose personal liability upon a government official for actions he takes under color of state law." *Handt v. Lynch*, 681 F.3d 939, 943 (8th Cir. 2012) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  To establish liability against officials in their individual capacity, "the plaintiff must show that the official, acting under color of state law caused the deprivation of a federal right." *Id.* at 943 (citing *Graham*, 473 U.S. at 166) (emphasis added); *see also Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.").  Put another way, it is not enough for a plaintiff seeking relief from a defendant in the defendant's individual capacity to allege that his rights were violated; the plaintiff must instead allege that his rights were violated *by the defendant*.

As the Court understands it, Plaintiff alleges that the CCDC has violated his constitutional rights in (1) his conditions of confinement; (2) medical treatment; and (3) access to the newspaper. But Plaintiff fails to allege any specific, particularized facts establishing that Sheriff Leroy Martin or Jerry Maness did (or did not do) something in violation of his constitutional rights.  In fact, aside from identifying Jerry Maness as a defendant to all his claims, Plaintiff does not specifically mention him by name in describing the factual predicate of those claims. Accordingly, Plaintiff's individual capacity claims against Jerry Maness and Sheriff Leroy Martin should be dismissed.

Sheriff Leroy Martin, moreover, cannot be liable for the torts of his subordinates merely because he is the sheriff. *See Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012). Instead, to establish a claim against Sheriff Martin in his individual capacity as a supervisor, Plaintiff must establish that "(1) he had notice of a pattern of unconstitutional acts committed by his subordinates; (2) was deliberately indifferent to or tacitly authorized those acts; and (3) failed to take sufficient remedial action; (4) proximately causing the injury to [Plaintiff]." *Id.* (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)) (internal quotations omitted)). To show "deliberate indifference or tacit authorization, [Plaintiff] must allege and ultimately prove that [the defendant] had notice that the training procedures and supervision were inadequate and likely to result in the constitutional violation." *Id.* at 355-56.

Here, Plaintiff alleges no facts suggesting that Sheriff Martin even had notice of the allegedly unconstitutional conditions of confinement. Indeed, Plaintiff claims that "[inmates'] attempts to resolve [the unconstitutional conditions of confinement] go no further than Gean Sieger the jail administrator, several attempts to retain a 1983 form has been denied." (Amend. Comp. at p. 5 (ECF No. 8)). Nor does Plaintiff allege any fact establishing that Sheriff Martin was aware of—and subsequently deliberately indifferent to—Plaintiff's efforts to obtain his prescribed mental health medications or the fact that CCDC inmates do not have access to "world news." Plaintiff's individual capacity claims against Sheriff Martin should therefore similarly be dismissed.

This leaves Plaintiff's individual capacity claims against Gean Sieger, the jail administrator. The Court addresses these claims with respect to each alleged constitutional violation.

### 1. Conditions of Confinement

Under the Fourteenth Amendment, "a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010) (citing *Bell v. Wolfish*, 441 U.S 520, 535 (1979)). There are two ways to determine whether conditions of confinement rise to the level of punishment. "[A] plaintiff could show that the conditions were intentionally punitive." *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (quoting *Bell*, 441 U.S. at 538). Alternatively, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate government purpose or were excessive in relation to that purpose." *Id.* (quoting *Bell*, 441 U.S. at 538-39). In conducting this analysis, courts consider the totality of the circumstances and "not any particular condition in isolation." *Id.* at 909.

As noted above, supervisors are liable under § 1983 "for their personal involvement in a constitutional violation . . . or when their corrective inaction amounts to deliberate indifference to or tacit authorization of the violative practices." *Choate v. Lockhart*, 7 F. 3d 1370, 1376 (8th Cir. 1993). Here, Plaintiff does not allege that Gean Sieger was directly involved in or allegedly caused the unconstitutional conditions of confinement. However, Plaintiff claims that Gean Sieger was aware of these conditions—including the black mold, leaky toilets, inadequate food, excessive use of pepper spray—but did not correct them. *Id.* Accordingly, for the purposes of preservice screening, the Court recommends that Plaintiff's conditions-of-confinement claim against Gean Sieger in her individual capacity for failure to train or supervise proceed.

### 2. Medical Indifference

Regarding medical indifference, because the Fourteenth Amendment "affords pre-trial detainees at least as much protection as the Eighth Amendment does to convicted prisoners,"

*Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006), courts apply the Eighth Amendment's "deliberate indifference" standard in determining whether there has been a constitutional violation in denying a pretrial detainee's access to medical care.  *Id.* Under this standard, "the plaintiff must demonstrate (1) that he suffered from objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).  A "serious medical need" is "one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Vaughn v. Greene Cty., Arkansas*, 438 F.3d 845, 851 (8th Cir. 2006).

Here, again, although there are no allegations that Gean Sieger was directly involved in the distribution of Plaintiff's medication, Plaintiff has alleged sufficient facts showing that he has a serious medical need being treated with medication, and that Gean Sieger—who oversees jail operations—was aware that the jail was not regularly providing him with this medication, but she did not correct the problem.  Accordingly, the Court also recommends that Plaintiff's medical indifference claim against Gean Sieger in her individual capacity for failure to supervise or train proceed.

### 3. Access to Newspaper

Finally, "[p]rison regulations which restrict an inmate's access to publications are valid under the Constitution if reasonably related to legitimate penological interests." *Cooper v. Schriro*, 189 F.3d 781, 784 (8th Cir. 1999) (quoting *Dawson v. Scurr*, 986 F.2d 257, 259-60, 63 (8th Cir. 1993), *cert. denied*, 510 U.S. 884 (1993)). Here, Plaintiff alleges that CCDC inmates are not allowed access to "world news." But he does not specify who is responsible for restricting inmates' access to "world news."  Accordingly, to the extent that Plaintiff asserts an individual capacity

claim against Gean Sieger—or any other defendant—for restricting his news access in violation of his constitutional rights, such a claim should be dismissed.

**B.      Official Capacity Claims**

Turning now to Plaintiff's claims against the defendants in their official capacities, "[a] suit against a government official in his or her official capacity is another way of pleading an action against an entity of which an officer is an agent." *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55 (1978)). Put differently, "the real party in interest in an official-capacity suit is the governmental entity and not the named official." *Baker*, 501 F.3d at 925 (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Under § 1983, a municipality cannot be held liable "solely because it employs a tortfeasor." *Bolderson v. City of Wentzville*, 840 F.3d 982, 985 (8th Cir. 2016) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Rather, "[l]iability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Id.* at 985 (*citing Atkinson v. Cty. of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013)). "An action can constitute official municipal policy only if the decisionmaker in question possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (citing *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013)). To trigger municipal liability based on custom, "the custom must be so pervasive among non-policymaking employees of the municipality that it effectively has the force of law." *Id.* at 986 (*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998)). The custom "must be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct." *Id.*

9

In this case, Plaintiff alleges that the unconstitutional conditions of confinement are pervasive throughout the CCDC, extending from the condition of the facility to the (substandard) quality of the food and rate at which the detention center uses pepper spray against the inmates. Further, Plaintiff claims that he has "continuously" been given the wrong medication and denied the opportunity to talk to a mental health counselor. (Amend. Comp. at p. 10 (ECF No. 8)). Finally, he claims that inmates are denied "world news." *Id.* at p. 12. For the purpose of preservice screening, the Court finds that these allegations are sufficient to establish a plausible municipal liability claim based on custom.

Plaintiff names all the defendants in their official capacities. *See* (ECF No. 8). Since official capacity claims are the same as claims against the Columbia County, multiple official capacity claims are redundant. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1184-85 (8th Cir. 1998). Here, as noted above, aside from naming Jerry Maness as a defendant, Plaintiff does not identify his role or mention his purported involvement—as an individual or as a Columbia County official—in these alleged constitutional violations. Accordingly, the Court recommends that Plaintiff's official capacity claims against Jerry Maness be dismissed. For the purposes of preservice screening, Plaintiff's official capacity claim against Gean Sieger and Sheriff Leroy Martin—for violating his constitutional rights in (1) the conditions of his confinement; (2) allowing him access to medical care; and (3) restricting his access to "world news"—should proceed.

## CONCLUSION

In sum, having reviewed Plaintiff's complaint pursuant to 28 U.S.C. § 1915A, this Court recommends that: (1) Plaintiff's individual and official capacity claims against Jerry Maness be dismissed; (2) Plaintiff's individual capacity claims against Sheriff Leroy Martin be dismissed; (3)

Plaintiff's official capacity claims against Gean Sieger and Sheriff Leroy Martin—for allegedly violating Plaintiff's constitutional rights in the conditions of his confinement, refusing him access to medical care, and restricting his access to "world news"—proceed; and (4) Plaintiff's individual capacity claims against Gean Sieger—for allegedly violating Plaintiff's constitutional rights in the conditions of his confinement and refusing him access to medical care—also proceed.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this 16th day of August 2023.

/s/  Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE