IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

D<small>E</small>ANDRE M. DISMUKE     PLAINTIFF

v.     Civil No. 1:23-cv-01067-BAB

LEROY MARTIN, Sheriff, Columbia County
Detention Center; and GEAN SIEGER;
    DEFENDANTS

# ORDER

Plaintiff DeAndre M. Dismuke, an inmate at the Columbia County Detention Center ("CCDC"), in Magnolia, Arkansas, filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis* ("IFP"). (ECF No. 12). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. (ECF No. 25). This matter is currently before the Court on Defendants' Motion for Partial Summary Judgment for Failure to Exhaust Administrative Remedies. *See* (ECF No. 21). Defendants have also filed a brief and statement of facts in support. *See* (ECF Nos. 22-23). Plaintiff has filed a response, *see* (ECF Nos. 29, 31), and Defendants have filed a reply, *see* (ECF No. 30). Defendants' Motion for Partial Summary Judgment is now therefore ripe for the Court's consideration. For the reasons described below, that Motion is GRANTED.

## PROCEDURAL POSTURE

Plaintiff initiated this matter in the Eastern District of Arkansas.[1] (ECF No. 1). After finding venue to be proper in this District pursuant to 28 U.S.C. § 1391(b), United States Magistrate Joe J. Volpe of the Eastern District of Arkansas ordered that this matter be transferred

---

[1] In this section, the Court does not endeavor to describe every docket entry, only those relevant to the Court's analysis of the Defendants' Motion for Partial Summary Judgment.

here. (ECF No. 3). Upon transfer, after noting potential legal and factual deficiencies with Plaintiff's Complaint, this Court ordered Plaintiff to submit an Amended Complaint. (ECF No. 6). This Court also ordered Plaintiff to file a complete IFP application. (ECF No. 7). Upon receipt of Plaintiff's Amended Complaint and complete IFP application, this Court reviewed the Amended Complaint pursuant to 28 U.S.C. § 1915A(a). After that review, this Court recommended that only the following claims proceed: (1) Plaintiff's official capacity claims against Gean Sieger and Sheriff Leroy Martin for allegedly violating Plaintiff's constitutional rights in the conditions of his confinement, refusing him access to medical care, and restricting his access to "world news;" and (2) Plaintiff's individual capacity claims against Gean Sieger for allegedly violating Plaintiff's constitutional rights in the conditions of his confinement and refusing him access to medical care. (ECF No. 14). Those recommendations were later adopted without objection. (ECF No. 20).

The Court then ordered Defendants Sieger and Martin be served with the Amended Complaint. (ECF No. 15). Upon receipt of their Answer, this Court ordered that Defendants either file a motion for summary judgment on whether Plaintiff exhausted his administrative remedies before initiating this action in federal court pursuant to 42 U.S.C. § 1997e(a) or promptly file a notice with the Court indicating that the Defendants did not intend to pursue such a defense at trial. (ECF No. 18). In response, Defendants filed the Motion for Partial Summary Judgment presently before the Court. (ECF Nos. 21-23). In addition to the Motion for Partial Summary Judgment, Defendants filed three exhibits, a legal memorandum, and statement of undisputed facts in support. *Id.* Those exhibits include: (1) Affidavit of Gean Sieger; (2) the Columbia County Detention Center ("CCDC") grievance procedure; and (3) Plaintiff's grievances. (ECF No. 21-1, 21-2, & 21-3).

The Court directed Plaintiff to respond to Defendants' Motion for Partial Summary Judgment by October 27, 2023, and provided instructions on how to respond in accordance with Fed. R. Civ. P. 56. (ECF No. 24). That order was not returned undeliverable. When that deadline passed with no response or communication from Plaintiff, this Court ordered Plaintiff to show cause why this action should not be dismissed for failure to prosecute. (ECF No. 26). This Order was also not returned as undeliverable. Plaintiff responded, claiming that he had already sent his response to the Defendants' Motion for Summary Judgment but that he had reason to believe that CCDC personnel were interfering with his mail. (ECF No. 27). This Court advised Plaintiff that the Court had not yet received his response and ordered him to submit one by December 11, 2023. (ECF No. 28). On November 27, 2023, Plaintiff submitted a self-styled "Response to Order to Show Cause." (ECF No. 29). Likely construing Plaintiff's filing as a response to the Motion for Partial Summary Judgment, later that same day, Defendants filed their reply. (ECF No. 30). On November 28, 2023, Plaintiff submitted a document entitled "Response to Motion for Summary Judgment." (ECF No. 31). Defendants have filed no further reply.

## BACKGROUND

The sole issue before the Court on Defendants' Motion for Partial Summary Judgment is whether Plaintiff first exhausted his administrative remedies before pursuing his claims in federal court in accordance with 42 U.S.C. § 1997e(a). As noted above, upon preservice review of Plaintiff's Amended Complaint pursuant to 28 U.S.C. § 1915A(a), the following claims remained pending: (1) Plaintiff's claims against Defendant Sieger in her personal and official capacity for refusing him access to medical care; (2) Plaintiff's claims against Defendant Sieger in her personal and official capacity for subjecting Plaintiff to unconstitutional "conditions of confinement;" (3) Plaintiff's official capacity claim against Defendants Sieger for restricting his access to "world

3

news;" and (4) Plaintiff's official capacity claims against Defendant Martin for refusing him access to medical care, subjecting him to unconstitutional conditions of confinement, and restricting his access to "world news." (ECF No. 14).

In support of these claims, Plaintiff contends that the walls, showers, and air ducts at the CCDC are covered in mold, that there is wastewater seeping from underneath the toilet in Pod-1, and that there is no sink for the inmates to wash their hands and face or to brush their teeth. (ECF No. 8). According to Plaintiff, on June 19, 2023, the inmates tried to pressure wash the showers to eliminate the black mold, but it returned worse than before they attempted to clean it. *Id.* Plaintiff contends that CCDC inmates are not given the opportunity to go outside for weeks, and when they are let outside, they are only afforded fifteen minutes. *Id.* Plaintiff contends that as of the date he filed his Amended Complaint, his pod/barracks had not been outside in 3 weeks. *Id.* Plaintiff says that his pod does not have a sink or adequate plumbing, and he describes rust on the eating tables, shower walls, and roof. *Id.* Plaintiff claims that inmates perform plumbing and electrical work at the CCDC even though they are not qualified. *Id.* at p. 12. Plaintiff says that these conditions have caused him to suffer breathing and sleeping problems, anxiety, congestion, and headaches. *Id.*

Regarding Plaintiff's access to medical care claim, Plaintiff asserts that Defendants Martin and Sieger have deprived him of his medications for his mental health and have denied his requests to see a mental health counselor. *Id.* at p. 6. Plaintiff contends that Defendant Sieger has said that she will address the problem, but nothing has changed. *Id.* According to Plaintiff, he has a history of mental health issues and was transferred from the CCDC to a mental health facility, but when he returned to the CCDC, the jail stopped providing him with his prescribed medication—or failed to provide him with the correct medication—and has not allowed him to

see a mental health professional, again causing his mental health to worsen. *Id.* Plaintiff claims that CCDC staff regularly use pepper spray on the inmates, causing him to suffer breathing problems and aggravating his asthma. *Id.* Plaintiff has requested his asthma medication, but those requests have been denied. *Id.*

Plaintiff further claims that the food at the CCDC is inadequate, leaving him hungry and causing problems between the inmates, which also worsens his mental health and has led him to experience suicidal ideations because he is so hungry. *Id.* at pp. 9-10. According to Plaintiff, the CCDC houses pretrial detainees with inmates who have been convicted of their charges, and since being detained at the CCDC, he has witnessed six inmates "get their manhood taken," but the PREA hotline does not work. *Id.* at p. 10.

Finally, Plaintiff claims that the CCDC does not provide inmates access to "world news," only the county newspaper, which does not address "politics, finances, diseases, or world events." *Id.* Plaintiff requests compensatory and punitive damages. *Id.* at p. 13.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001). In response, the nonmoving party

5

"may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

Section 1997e(a) of the Prison Litigation Reform Act (PLRA) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions." *Booth v. Churner*, 532 U.S. 731, 733 (2001). This requirement is mandatory. *See Chelette v. Harris*, 299 F.3d 684, 687 (8th Cir. 2000). But "[i]f an inmate fails to exhaust one or more discrete claims raised in the § 1983 complaint, the PLRA requires only that the unexhausted claim or claims be dismissed—it does not require that the complaint be dismissed in its entirety." *Abdul-Muhammad v. Kempker*, 486 F.3d 444, 446 (8th Cir. 2007) (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

In determining whether the plaintiff has first exhausted his administrative remedies, courts look to the prison's grievance procedure. *Id.* "[T]he degree of specificity required in a prison grievance 'will vary from system to system and claim to claim, but it is the prison's requirements, and not that PLRA, that define the boundaries of proper exhaustion.'" *Id.* (quoting *Jones*, 549 U.S. at 218)). Thus, to satisfy Section 1997(e)(a)'s exhaustion requirement, inmates must file grievances in accordance with the institution's policies and procedures. *See Washington v. Uner*, 273 F. App'x 575, 577 (8th Cir. 2008) (citing *Woodford v. Ngo*, 548 U.S. 81, 91-92 (2006)).

In this case, Defendants concede that Plaintiff exhausted his administrative remedies with respect to his claims about being denied access to medical care and his claims related to an

inadequate diet and mold in the facility. (ECF No. 21, p. 2). Instead, Defendants pursue summary judgment for failure to exhaust on the following:

(1) That wastewater is seeping from underneath the toilet in Pod-1;

(2) That there is no sink (or adequate plumbing) for the inmates to wash their hands and face or to brush their teeth;

(3) That he has witnessed multiple suicide attempts;

(4) That CCDC staff regularly use pepper spray on the inmates;

(5) That CCDC houses pretrial detainees with post-trial inmates;

(6) That he has witnessed [inmates] having "their manhood taken;"

(7) That the PREA hotline does not work;

(8) That inmates are not allowed outside for a time more than 15 minutes;

(9) That there is rust on the eating tables, shower walls, and roof;

(10) That inmates preform [sic] plumbing and electrical work at the CCDC even though they are not qualified; and

(11) That inmates are only given the county newspaper and not access to "world news."

(ECF No. 21, pp. 2-3).

In response,[2] Plaintiff contends that when he was detained at the CCDC, his mother brought him his mental health medication, but the jail staff did not administer them. (ECF No. 29).

---

[2] In directing Plaintiff to respond to Defendants' Motion for Summary Judgment, the Court explained that Plaintiff could not rely on mere argument. (ECF No. 24). Rather, the Court directed Plaintiff to submit affidavits, prison records, or other evidence establishing that there is a genuine issue of material fact for trial. *Id.* Plaintiff's responses, however, do not constitute evidence—they are neither sworn under penalty of perjury pursuant to 28 U.S.C. § 1746, nor notarized. Further, Plaintiff has not submitted any other evidence, such as prison records or medical records, for the Court to consider in addressing Defendants' Motion for Partial Summary Judgment. Accordingly, the Court refers to Plaintiff's verified Amended Complaint to determine whether there are any material fact disputes. *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) (concluding that plaintiff's second amended complaint is the equivalent to an affidavit and can serve as plaintiff's response to defendants' summary judgment motion because it was verified

Plaintiff contends that without his prescribed medication, he began experiencing suicidal ideations. According to Plaintiff, he was eventually transported to a mental health hospital where he stayed for approximately a week, but when he returned, CCDC staff again failed to administer his prescribed mental health medications, which led him to again suffer suicidal ideations. *Id.* Plaintiff says he wrote "grievance after grievance asking for [his] medication and for help." *Id.* Plaintiff claims that "[he] tried to get the exact dates up on the kiosk but the grievances [he] wrote about [his] medication is not on the kiosk anymore." *Id.* Plaintiff says that when jail staff was refusing to administer his mental health medication, he called his mother for help, who scheduled an appointment for him with his doctor. *Id.* Plaintiff claims that he was then able to obtain his medication "off-and-on" for a few weeks. *Id.*

In reply, Defendants reassert that they are not pursuing summary judgment on Plaintiff's claims that he was denied proper medical care, that his diet was constitutionally inadequate, and that he was subjected to mold. (ECF No. 30). As to all other claims, Defendants contend that Plaintiff has not established a material fact dispute necessary to preclude summary judgment on those claims. *Id.* This Court agrees.

A copy of the CCDC grievance policy is provided to every inmate when they are booked into the facility. (ECF No. 21-1, p. 1). The grievance policy itself provides, in pertinent part, that the "detainee must clearly describe all facts and all requests in the grievance." (ECF No. 21-2). This grievance process is available to inmates through the "kiosk system." (ECF No. 21-1, p. 1).

---

under penalty of perjury) (citing *Spear v. Dayton's*, 733 F.2d 554, 555-56 (8th Cir. 1984)). The Court considers Plaintiff's responses as argument in opposition to Defendants' Motion for Partial Summary Judgment.

8

Plaintiff does not dispute these facts. Accordingly, for the purposes of Defendants' Motion for Summary Judgment, the Court considers these facts undisputed. *See* Fed. R. Civ. P. 56(e)(2).

In support of their Motion for Partial Summary Judgment, Defendants submitted copies of Plaintiff's grievances. (ECF No. 21-3). Plaintiff says that his grievances about being denied medical care (and specifically his prescribed mental health medication) were missing from the kiosk when he went to make copies of them. (ECF No. 31). But Plaintiff is not asserting that Defendants did not include these grievances in their submissions. *See* (ECF Nos. 29, 31). Further, and more to the point, Defendants are not pursuing summary judgment on the issue of exhaustion as to this claim. (ECF No. 21, p. 2). Plaintiff, moreover, has not presented any evidence—in the form of an affidavit or otherwise—asserting that he submitted additional grievances regarding the claims subject to Defendants' Motion for Partial Summary Judgment that Defendants did *not* include in their submissions. *See* (ECF Nos. 29, 31). Accordingly, the Court considers the grievances Defendants submitted in support of their Motion for Partial Summary Judgment as the closed universe of grievances related to the claims Plaintiff asserts in his Amended Complaint.

Defendants contend that none of these grievances concern the following claims:

(1) That wastewater is seeping from underneath the toilet in Pod-1;

(2) That there is no sink (or adequate plumbing) for the inmates to wash their hands and face or to brush their teeth;

(3) That he has witnessed multiple suicide attempts;

(4) That CCDC staff regularly use pepper spray on the inmates;

(5) That CCDC houses pretrial detainees with post-trial inmates;

(6) That he has witnessed [inmates] having "their manhood taken;"

(7) That the PREA hotline does not work;

(8) That inmates are not allowed outside for a time more than 15 minutes;

9

    (9) That there is rust on the eating tables, shower walls, and roof;

    (10)    That inmates preform [sic] plumbing and electrical work at the CCDC even though they are not qualified; and

    (11)    That inmates are only given the county newspaper and not access to "world news."

(ECF No. 21, pp. 2-3). Indeed, Plaintiff asserts no facts in dispute of this contention. And, upon a close and thorough review of those grievances, this Court agrees that Plaintiff has failed to exhaust his administrative remedies with respect to these claims.

    To be sure, Section 1997e(a) only requires the exhaustion of administrative remedies "as available" before filing a federal suit. *See* 42 U.S.C. § 1997e(a). "As available," in turn, means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of." *Ross v. Blake*, 578 U.S. 632, 643 (2016) (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Here, however, Plaintiff presents no evidence suggesting that the CCDC grievance procedure was "unavailable" to him. Accordingly, Defendants Motion for Partial Summary Judgment, (ECF No. 21), is GRANTED.

## CONCLUSION

    In sum and for all the reasons outlined above, Defendant's Motion for Partial Summary Judgment, (ECF No. 21), is **GRANTED**. Plaintiff's claims that (1) wastewater is seeping from underneath the toilet in Pod-1; (2) there is no sink (or adequate plumbing) for the inmates to wash their hands and face or to brush their teeth; (3) Plaintiff has witnessed multiple suicide attempts; (4) CCDC staff regularly use pepper spray on the inmates; (5) CCDC houses pretrial detainees with convicted inmates; (6) Plaintiff has witnessed [inmates] having "their manhood taken;" (7) the PREA hotline does not work; (8) inmates are not allowed outside for a time more than 15 minutes; (9) there is rust on the eating tables, shower walls, and roof; (10) inmates perform

plumbing and electrical work at the CCDC even though they are not qualified; and (11) inmates are not provided access to "world news" are **DISMISSED WITHOUT PREJUDICE**.

The following claims shall proceed: (1) Plaintiff's official capacity claims against Defendants Sieger and Martin for housing Plaintiff in a facility with mold and depriving him of an adequate diet in violation of his constitutional rights; (2) Plaintiff's official capacity claims against Defendants Sieger and Martin for denying him proper access to medical care in violation of his constitutional rights; (3) Plaintiff's individual capacity claims against Defendant Sieger for denying him of proper medical care, housing him in a facility with mold, and depriving him of an adequate diet.

**IT IS SO ORDERED.**

**DATED** this 22nd day of February 2024.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE